UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

**REPORT AND
RECOMMENDATION**

v.

08-CR-00321(S)(M)

VINCENZO ANELLO,

                        Defendant.
_____

This case was referred to me by Hon. William M. Skretny for supervision of all

pretrial proceedings [11].[1]  Before me is defendant's pretrial motion to dismiss and strike [14].[2]

Oral argument was held before me on June 22, 2009, and I permitted defendant to file a post-

argument memorandum [24].  For the following reasons, I recommend that defendant's motion

be DENIED.


## BACKGROUND

Defendant is charged in a four-count indictment [1] with, *inter alia*,  violations of

the Hobbs Act, 18 U.S.C. §1951, and honest services mail fraud, 18 U.S.C. §§1341 and 1346.

The indictment alleges that in June 2003, while he was a councilman  for the City of Niagara

Falls, defendant asked a local businessman, Joseph Anderson to lend him money (indictment,  p.

8, ¶3), that thereafter, while defendant served as a city councilman and subsequently as mayor-

elect of the City of Niagara Falls, defendant received three checks totaling $40,000, drawn on the

account of Aarow Brokers, a company for which Mr. Anderson's then wife had authority to sign

---

[1]        Bracketed references are to the CM/ECF docket entries.

[2]        Defendant confirmed at oral argument that the other aspects of his motion [14] are moot.

checks that were approved by Mr. Anderson and made payable to defendant's company, Anello

Electric Construction Company (id., pp. 3, 9-11), that in March 2004, defendant recommended to

the Niagara Falls City Council that it approve a lease agreement between the City and East Mall

Entertainment, LLC, a corporation in which Mr. Anderson was a principal (id., pp. 3 and 11),

and that until defendant's receipt of money from Mr. Anderson was reported in the media in May

2005, defendant did not report these transactions as allegedly required by the City Ethics Code

(id., pp. 5-7, 12).

Defendant moves to dismiss the indictment upon several grounds, which are

discussed below.


## DISCUSSION AND ANALYSIS

### A.     Motion to Dismiss

#### 1.     The Hobbs Act Counts Are Facially Sufficient

Defendant argues that Counts I and IV of the indictment  alleging violations of

the Hobbs Act, 18 U.S.C. §1951, are facially insufficient because they fail to allege a *quid pro*

*quo*, an essential element of such crime.  Defendant's Memorandum of Law [14], pp. 7-12.  In

response, the government argues that the indictment satisfies the requirements of Fed. R. Crim

Pro. ("Rule") 7(c), which makes it unnecessary for the indictment "to charge a *quid pro quo* in

so many words." Government's Response [17], pp. 30-32.

Rule 7(c)(1) requires that "[t]he indictment . . . shall be a plain, concise and

definite written statement of the essential facts constituting the offense charged." The Hobbs Act

makes it a crime to "obstruct[], delay[], or affect[] commerce . . . by robbery or extortion".  18

U.S.C. §1951(a). Extortion is defined in the statute as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. §1951(b)(2). Defendant concedes that the indictment charges him "with violating the Hobbs Act by 'extortion' 'under color of official right.'" Defendant's Memorandum of Law [14], p. 8.

In McCormick v. United States, the Supreme Court held that evidence of a *quid pro quo* is necessary for conviction under the Hobbs Act when an official receives a campaign contribution. 500 U.S. 257, 273-274 (1991). The Supreme Court later extended the *quid pro quo* requirement to "extortion under color of official right" cases. *See* Evans v. United States, 504 U.S. 255, 268 (1992).

The Second Circuit has explained that in order to obtain a conviction under the Hobbs Act, "no explicit agreement between [the private individual] and [the public official] need have been shown". United States v. Garcia, 992 F. 2d 409, 415 (2d Cir. 1993). However, "the government must have shown that [the public official] received the payment 'knowing that [it] was made in return for official acts.'" Id. (quoting Evans, supra, 504 U.S. at 268).

While it will be the government's burden at trial to establish that defendant "understood that the payment was made in return for performance of those duties", the indictment need not allege a *quid pro quo*. Id. *See* United States v. Ganim, 510 F.3d 134, 144 (2d Cir. 2007)("'the government does not have to prove an explicit promise to perform a particular act made at the time of payment' . . . . Instead, 'it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence - i.e., on behalf of the payor - as specific opportunities arose.'"). "The requirement of

a *quid pro quo*, rather than amounting to an additional element unspecified in the statute, is encompassed within the language of the statute itself.  The term 'under color of official right,' as used in the statute, is not generic in nature, but, instead, is a 'legal term of art.'. . .  The legal definition of 'under color of official right' thus 'does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him' . . .  As the definition of a legal term 'need not be alleged in the indictment in order to establish its sufficiency' . . . the Court rejects Defendants' contention that the Government was required to separately allege a *quid pro quo*."  <u>United States v. Aliperti</u>, 867 F. Supp. 142, 145 (E.D.N.Y. 1994).[3]

"An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."  <u>United States v. Hall</u>, 20 F.3d 1084, 1087 (10th Cir.1994).  In accordance with the statutory requirements for a Hobbs Act violation, the indictment alleges that defendant "did knowingly and unlawfully obstruct, delay, and affect commerce . . . by extortion, in that the defendant, acting under color of official right, did knowingly obtain from Joseph Anderson, with the consent of Joseph Anderson, a check in the amount of $10,000".  Indictment [1], p. 16, ¶2. That allegation is sufficient to survive defendant's dismissal motion.  Because "'there is no such thing as a motion for summary

---

[3]    *Compare with* <u>United States v. Blitch</u>,  2008 WL 5115028, *2 (M.D.Ga. 2008) ("The Supreme Court of the United States has noted 'that while an indictment parroting the language of a federal criminal statue is often sufficient, there are crimes that must be charged with greater specificity.'. . .   In the Court's view, the Hobbs Act offense at issue here is a crime that must be charged with greater specificity than merely parroting the language of the statute.  Specifically, the indictment must allege the *quid pro quo* element of the offense that has been grafted onto the statute by case law.").

judgment in a criminal case'", I need not analyze the sufficiency of the government's evidence, including whether it can ultimately establish the existence of a *quid pro quo*. United States v. Parker, 165 F. Supp.2d 431, 458 (W.D.N.Y. 2001) (Arcara, J.) (quoting Russell v. United States, 369 U.S. 749, 791 (1962) (Harlan, J. dissenting).

Defendant further argues that certain factual allegations in the indictment "negate the commission of any offense by Mr. Anello in violation of [the] statute." Defendant's Memorandum of Law [14], p. 12. Specifically, he relies on the allegation in the indictment that defendant failed to disclose to the City his "potential motivation". Indictment [1], p. 7, ¶20. Defendant relies on United States v. Panarella, 277 F.3d 678, 685 (3d Cir.), cert. denied, 537 U.S. 819 (2002), which held that "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation". However, as argued by the government, there is no indication that the Second Circuit has adopted Panarella's holding. Government's Sur-Reply [21], p. 2.

Defendant also relies on United States v. Pirro, 212 F.3d 86 (2d Cir. 2000). Defendant's Supplemental Memorandum of Law [24], Point I. In Pirro, the indictment charged violations of 26 U.S.C.§ 7206(1), which makes it a felony to "willfully make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which [the filer] does not believe to be true and correct as to every material matter". The indictment in Pirro alleged that the defendant failed to report the "ownership interest" of the company's chairman and also misstated his own ownership interest on the company's tax return. Id. at 87. However, the government conceded that there

was no requirement that the corporation report "ownership interests" on its corporate tax return. Id. at 90.

The court dismissed the indictment, finding that it "failed to sufficiently allege the second element of a section 7206(1) violation, namely a material falsehood or an omission that amounted to a material falsehood." Id. at 93. The court held that because "only the omission of facts required to be reported constitutes a material falsehood[,] [t]he indictment must . . . allege what made the omission in this case criminal." Id. Noting that "'where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species-it must descend to particulars'", the court concluded that "'ownership interest' is a generic term that does not descend to particulars". Id. at 93-94. In so holding, the court noted that "when 'one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense'". Id. at 93 (quoting United States v. Foley, 73 F.3d 484, 488 (2d Cir. 1996) abrogated on other grounds, United States v. Santopietro, 166 F.3d 88, 92-93 (2d Cir. 1999)).

Unlike the statute at issue in Pirro, the phrase "under color of official right", which incorporates the requirement of a *quid pro quo*, "is not generic in nature, but, instead, is a 'legal term of art.'" Aliperti, supra, 867 F. Supp. at 146. *See also* United States v. Klein, 476 F.3d 111, 113 -114 (2d Cir. 2007), cert. denied, 128 S.Ct. 804 (2007) (rejecting the defendant's argument that the indictment was insufficient because it did not explicitly allege that the defendant's fraudulent acts were "material", holding that materiality could be inferred from the

word fraud in the indictment). Moreover, the allegation in the indictment that defendant failed to disclose to the City his "potential motivation" for recommending to the City Council that it approve a lease agreement between the City and East Mall Entertainment, LLC, does not negate the other, appropriately pleaded, allegations which satisfactorily allege a Hobbs Act violation.

Therefore, I recommend that this aspect of defendant's motion be denied.

## 2. The Hobbs Act Is Constitutional As - Applied

Defendant argues that the Hobbs Act is unconstitutional as - applied to him because "no reasonable person could know that he could be prosecuted under the statute in the absence of a *quid pro quo*, based simply on a failure to report payments." Defendant's Memorandum of Law [14], p. 14.

"The void - for - vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). "In deciding an as - applied vagueness challenge, the court employs a two - part test: (1) does the statute provide sufficient notice and (2) does the statute provide limits on the discretion of law enforcement authorities . . . . With regard to the first factor, '[t]he test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'. . . Furthermore, '[b]ecause the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness.'" United States v. Kernan, 2009 WL 606146, *2 (N.D.N.Y. 2009).

Defendant's argument is based upon the flawed premise that he is being prosecuted under the Hobbs Act in the absence of a *quid pro quo* solely for "receiv[ing] loans for his business and that he failed to make timely public disclosure of those loans." Defendant's Memorandum of Law [14], pp. 13-14. As previously discussed, while the existence of a *quid pro quo* is an element of a Hobbs Act violation which must be proven at trial, it need not be alleged in the indictment.

"Case law can define a statutory term sufficiently to defeat a void - for - vagueness argument." United States v. Lippold, 2007 WL 3232483, *7 (C.D.Ill. 2007). The indictment states that defendant is being prosecuted for "knowingly and unlawfully obstruct[ing], delay[ing], and affect[ing] commerce . . . by extortion, in that the defendant, acting under color of official right, did knowingly obtain from Joseph Anderson, with the consent of Joseph Anderson, a check in the amount of $10,000." Indictment [1], p. 16, ¶2. The existence of a *quid pro quo* is encompassed under the statutory requirement that the official receive payment "under color of official right". Aliperti, supra, 867 F. Supp. at 145-146. Thus, defendant's as - applied vagueness challenge fails because the conduct for which he is charged is clearly proscribed by the statute.

Defendant's argument that the Hobbs Act is unconstitutionally vague on its face is likewise rejected. *See* United States v. Williams, 621 F. 2d 123, 125 (5th Cir. 1980), cert. denied, 450 U.S. 919 (1981) ("We hold the terms of [the Hobbs Act] to be sufficiently precise to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'"). Therefore, I recommend that defendant's as - applied challenge to the Hobbs Act claim be denied.

### 3. Count I Sufficiently Alleges a Conspiracy

Defendant argues that Count I of the indictment is facially deficient because it fails to allege the existence of an agreement between defendant and Joseph Anderson to affect commerce. Defendant's Memorandum of Law [14], pp. 15-17. However, the indictment does specifically allege that defendant "acting under color of official right, did knowingly, willfully, and unlawfully combine, conspire and agree with others known to the Grand Jury, to obstruct, delay, and *affect commerce* . . . by means of extortion". Indictment [1], p. 8, ¶2 (emphasis added). Therefore, the indictment is sufficient on its face.

As the government notes, it is not required to establish that the intended purpose of the conspiracy was to affect commerce. *See* United States v. Rivera-Rivera, 555 F. 3d 277, 290 (1st Cir. 2009) ("the government is not required to prove that the defendants intended to affect commerce"); United States v. Williams, 342 F. 3d 350, 354 (4th Cir. 2003), cert. denied, 540 U.S. 1169 (2004) ("The Hobbs Act . . . does not require proof that a defendant intended to affect commerce or that the effect on commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions."). Therefore, I recommend that defendant's motion to dismiss Count I of the indictment be denied.

### 4. The Honest Services Mail Fraud Statute is Constitutional on its Face and As - Applied

Count III of the indictment charges defendant with a scheme to deprive the City of the right to honest services in violation of 18 U.S.C. §§1341 and 1346, and Count II charges defendant with conspiracy to violate these statutes.

18 U.S.C. §1341 defines mail fraud as "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . ." A "scheme or artifice to defraud" as defined in 18 U.S.C. §1341 "includes a scheme or artifice to deprive another of the intangible right of honest services". 18 U.S.C. §1346.

Relying on <u>United States v. Handakas</u>, 286 F. 3d 92 (2d Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 894 (2004), defendant argues "that panel held that the 'honest services provision was void-for-vagueness as - applied to the defendant in that case." Defendant's Memorandum of Law [14], p. 19. However, he acknowledges that in <u>United States v. Rybicki</u>, 354 F. 3d 124 (2d Cir. 2003) (en banc), <u>cert</u>. <u>denied</u>, 543 U.S. 809 (2004) the Second Circuit overruled the portion of <u>Handakas</u>, <u>supra</u>, that declared the statute void - for - vagueness as - applied. <u>Id</u>. Instead, defendant argues that this "case presents an ideal occasion to re-examine the constitutional questions". Defendant's Memorandum of Law [14], p. 19.


### i.     As - Applied Challenge

Defendant cites several reasons why the statute fails to give notice that the conduct alleged in the indictment could be considered unlawful, including: "(1) there was no alleged *quid pro quo* underlying the loan payments; (2) Mr. Anello had a right to rely on the terms of a local law that did not require him to disclose the payments until May 15, 2004 and therefore rendered any untimely disclosure immaterial; (3) no other violation of state or local law is pleaded; (4) there is no allegation that the loan payments had any actual influence on Mr. Anello's exercise of his official responsibilities; (5) there is no allegation that Mr. Anello's powers as mayor included any authority to approve the lease; (6) there is no allegation of any

actual, intended, or contemplated harm resulting from the alleged failure to disclose; (7) there is no allegation that the lease was for anything less than fair market value or was otherwise detrimental to the City's interests; (8) there is no allegation that Mr. Anello stood to gain anything from the lease arrangement; and (9) the use of the mails was not foreseeable and was truly tangential to the objectives of any alleged 'scheme.'" Defendant's Memorandum of Law [14], p. 20.  None of these reasons are compelling.

The honest services mail fraud statute prohibits  "a scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers) purporting to act for and in the interests of his or her employer (or of the person to whom the duty of loyalty is owed) secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer."  Rybicki, supra, 354 F. 3d at 126-27.   A conviction for honest services wire fraud requires a showing of  "(1) a scheme or artifice to defraud; (2) for the purpose of depriving another of the intangible right of honest services . . .; (3) where the misrepresentations (or omissions) made by the defendants are material in that they have the natural tendency to influence or are capable of influencing the employer to change its behavior; and (4) use of the mails or wires in furtherance of the scheme".  Id. at 147.

The indictment clearly sets forth facts which support the alleged violation of 18 U.S.C. §1346, including that defendant, while acting as a government official, received money from Mr. Anderson and retained these monies without disclosing (as required) the receipt of such funds prior to recommending that the City Council accept a contract with a company that

Mr. Anderson was a principal, thereby depriving the City of disinterested decision making. Indictment [1], pp. 1-13. The indictment also alleges that defendant's conduct was done knowingly and intentionally to defraud. Indictment [1], p. 14, ¶2, p. 15, ¶2.

As did the Second Circuit in <u>Rybicki</u>, <u>supra</u>, I conclude that section 1346 "together with . . . section 1341 . . . 'gives the person of ordinary intelligence a reasonable opportunity to know' . . . that conduct of the type in which the defendant[] engaged with the specific intent to defraud . . . deprived the [victim] of the 'honest services' of their employees and is therefore prohibited by law." 354 F. 3d at 132. Therefore, I recommend that defendant's as - applied challenge be denied.


ii.       **Facial Challenge**

Defendant also argues that "neither the Supreme Court nor the Second Circuit has had occasion to invalidate the 'honest services' mail fraud statute on their face". Defendant's Memorandum of Law [14], p. 19. However, the Second Circuit in <u>Rybicki</u>, <u>supra</u>, held that 18 U.S.C. §1346 "is not unconstitutional on its face". 354 F. 3d at 144. Absent further word from the Second Circuit or the Supreme Court,[4] I may not revisit that holding. "To the extent that the Second Circuit in <u>Rybicki</u> has already rejected defendants' arguments concerning the constitutionality of §1346, then, defendants raise those arguments simply to preserve their rights

---

[4]        As noted by the government, the Supreme Court has recently granted certiorari in an honest services mail fraud case . *See* <u>United States v. Black</u>, 129 S.Ct. 2379 (2009). Although at this point it is anyone's guess as to what the Court will do, Justice Scalia has indicated that he, at least, has serious concerns as to the constitutionality of §1346. In dissenting from the denial of certiorari in <u>Sorich v. United States</u>, 129 S.Ct. 1308 (2009), he posed the question: "'How can the public be expected to know what the statute means when the judges and prosecutors themselves do not know, or must make it up as they go along?'" <u>Id.</u> at 1310 (quoting from Judge Jacobs' dissenting opinion in <u>Rybicki</u>, <u>supra</u>).

should the Supreme Court overrule <u>Rybicki</u>. Unless and until that happens, however, <u>Rybicki</u> remains the law in this circuit, and I deny defendants' motions to dismiss the honest services fraud Counts on the grounds that §1346 is facially 'void for vagueness.'" <u>United States v. Nicolo</u>, 523 F. Supp. 2d 303, 307 (W.D.N.Y. 2007) (Larimer, J.).

Therefore, I recommend that defendant's facial challenge be denied.

### 5. The Honest Services Mail Fraud Counts Sufficiently Allege a Scheme Furthered by "Mailing"

Defendant argues that Counts II and III of the indictment fail to allege that the scheme was furthered by a "mailing", and that such "mailing" was not otherwise foreseeable. Defendant's Memorandum of Law [14], pp. 23-26.

The mail fraud statute, 18 U.S.C. §1341, makes it unlawful to use the mails or any "private or commercial interstate carrier" to perpetrate a fraud. The indictment alleges that after receiving a series of checks from Mr. Anderson drawn from the account of Aarow Brokers and made payable to Anello Electric Company, he deposited these checks with HSBC Bank, thereby "causing such check[s] to be transported by AirNow and AirNet Systems, Inc., both of which were private and commercial interstate carriers." Indictment [1], pp. 9-11, ¶¶4-12.

Defendant relies primarily on <u>Kann v. United States</u>, 323 U.S. 88 (1944) to argue that the scheme was not furthered by a mailing. In <u>Kann</u>, the defendants had fraudulently obtained two checks and cashed them. The Court held that the bank's act of mailing the checks to the drawee bank was not in furtherance of the fraud because "the scheme was completely executed as respects the transactions in question when the defendants received the money intended to be obtained by their fraud, and the subsequent banking transactions between the

banks concerned were merely incidental and collateral to the scheme and not a part of it." 323 U.S. at 94.

However, "Kann predates the Uniform Commercial Code, which makes it easy for a customer's bank to reverse the credit if the instrument cannot be collected." United States v. Franks, 309 F. 3d 977, 978 (7th Cir. 2002) ("when use of the mails does no more than determine where a loss falls, §1341 has not been violated"). Thus, circumstances similar to those here, courts have held the use of interstate means required by 18 U.S.C. §1341 to be satisfied: "Franks deposited the checks into her personal account. Even if she drew off the embezzled funds promptly, her own funds remained and could have been debited to cover the loss, had the checks not been sent out of state and paid in due course. This made interstate transportation essential to the scheme's success." Id.

Defendant argues that the logic of the Franks decision is "misguided" because the Maryland "commercial laws in effect at the time the Supreme Court decided Kann has exactly the same effect as the Uniform Commercial Code provisions addressed in Franks . . . . More specifically, Maryland law provided at the time that when a bank accepted a check for collection, the bank assumed merely an agency relationship in respect to its customer, so that the customer could not make a withdrawal against the deposited funds until final collection of the checks deposited and transmitted to the drawee bank." Defendant's Supplemental Memorandum of Law [24], pp. 7-8. However, this argument is undercut by Kann, which suggests that the bank would have no recourse against a customer who cashed a check that later was found to be uncollectible: "The scheme in each case had reached fruition. The persons intended to receive the money *had received it irrevocably*. It was immaterial to them, or to any consummation of the scheme, how

-14-

the bank which paid or credited the check would collect from the drawee bank. It cannot be said that the mailings in question were for the purpose of executing the scheme, as the statute requires." Kann, supra, 323 U.S. at 94 (emphasis added).

Defendant also argues that Kann continues to be good law because it has not been expressly overruled by the Supreme Court. Defendant's Supplemental Memorandum of Law [24], p. 8. However, Kann's holding has been limited by subsequent Supreme Court precedent, including Schmuck v. United States, 489 U.S. 705 (1989). In Schmuck, the defendant sold cars to retailers with falsified odometer readings, and was convicted of mail fraud based on the subsequent mailing of title applications by the retailers after they resold the cars. In affirming the conviction, the court stated, "To be part of the execution of fraud . . . the use of the mails *need not be an essential element of the scheme*. . . . It is sufficient for the mailing to be 'incident to an essential part of the scheme' . . . or a step in [the] plot." Id. at 710-11 (emphasis added).

Although defendant argues that the checks were transported by commercial interstate carrier *after* the alleged scheme concluded, "there is no requirement that the mailings precede the fraud." United States v. Slevin, 106 F. 3d 1086, 1089 (2d Cir. 1996). Thus, I find that the indictment sufficiently alleges that mailings were used in furtherance of the scheme.

Defendant's argument that it was not reasonably foreseeable that the requisite mailing would occur is also unpersuasive. "'The defendant need not personally initiate or receive the mailing to be liable for mail fraud, so long as the use of the mails by others was reasonably foreseeable. Any mailing incidental to an essential part of the scheme will be regarded as reasonably foreseeable.'" In re Sumitomo Copper Litigation, 995 F. Supp. 451, 457 (S.D.N.Y. 1998). The indictment alleges that defendant "caused to be deposited . . . a check . . .

to be sent and delivered by private and commercial interstate carrier".  Indictment [1], p. 15, ¶2.

Thus, the indictment is sufficient on its face in this regard, and defendant's argument is better

left for trial.  *See* Franks, supra, 309 F. 3d at 978.  ("a contention that Franks did not know that

interstate means would be used to collect would be untenable").

Accordingly, I recommend that this aspect of defendant's motion to dismiss be

denied.


**6.      Honest Services Mail Fraud Counts Are Otherwise Sufficiently Pled**

Defendant further argues that the indictment fails to allege cognizable offenses

under the mail fraud statute because (1) it fails to allege any *quid pro quo* underlying the

payments to defendant, (2) the only wrongdoing alleged in the indictment is defendant's failure

to timely disclose the payments from Mr. Anderson, and (3) defendant's alleged violation of

state ethics law is insufficient to establish that he deprived the citizenry of their right to honest

services.  Defendant's Memorandum of Law [14], pp. 27-31.

As previously discussed, the elements of  honest services wire fraud are "(1) a

scheme or artifice to defraud; (2) for the purpose of depriving another of the intangible right of

honest services . . .; (3) where the misrepresentations (or omissions) made by the defendants are

material in that they have the natural tendency to influence or are capable of influencing the

employer to change its behavior; and (4) use of the mails or wires in furtherance of the scheme".

Rybicki, supra, 354 F. 3d at 147.

The indictment alleges that defendant "knowingly devised . . . a scheme to

defraud, namely, to deprive the City of Niagara Falls . . . of the intangible right of honest

services, and for the purpose of executing such scheme . . . caused to be deposited . . . a check in the amount of $10,000, to be sent and delivered by private and commercial interstate carrier." Indictment [1], p. 15, ¶2.  It also alleges that defendant, while acting as a government official, received money from Mr. Anderson and retained these monies without disclosing  (as required) the receipt of such funds  prior to recommending that the City Council accept a contract with a company that Mr. Anderson was a principal, thereby depriving the City of disinterested decision making. Indictment [1], pp. 1-7 and 8-13.

I find that these allegations are facially sufficient to support the alleged charge. Defendant argues that the honest service mail fraud claims are insufficient because they fail to allege a *quid pro quo*.  This argument is misplaced.  In fact, United States v. Kincaid-Chauncey, 556 F. 3d 923, 940-941 (9th Cir. 2009), petition for cert. filed,  No. 09-5076 (June 29, 2009), upon which defendant relies, belies this argument: "we do not believe that a *quid pro quo* should be required in all §1346 prosecutions; in fact, imposing a *quid pro quo* requirement on all §1346 cases risks being under-inclusive, because some honest services fraud, such as the failure to disclose a conflict of interest where required, may not confer a direct or easily demonstrated benefit."

Relying on a series of cases outside of the Second Circuit, defendant also argues that a  violation of the ethics law is insufficient to establish that he deprived the citizenry of honest services. Defendant's Memorandum of Law [14], pp. 28-29.  However, the Second Circuit has held that  "a violation of local law is *not* an essential element of a scheme to defraud in contravention of 18 U.S.C. §1341".  United States v. Margiotta, 688 F.2d 108, 124 (2d Cir. 1982), rehearing denied, 811 F.2d 46, cert. denied,  461 U.S. 913 (1983) (emphasis added);

United States v. Middlemiss, 217 F.3d 112, 120 (2d Cir. 2000) (finding a violation of 18 U.S.C. §§1341 and 1346 where by "violat[ing] his employer's rules regarding conflicts of interest and financial disclosures [, the defendant] . . . did not render all the services that a totally faithful employee would have provided [his employer], and his actions were not in the best interests of his employer"). *See also* United States v. Urciuoli, 513 F.3d 290, 298 (1st Cir. 2008) (discussing the Circuit split on this issue).[5] Moreover, "the specific intent required under the mail fraud statute is the intent to defraud . . . and not the intent to violate a statute." United States v. Porcelli, 865 F.2d 1352, 1358 (2d Cir.), cert. denied, 493 U.S. 810 (1989).

Although defendant also argues that the ethics requirements did not require him to disclose the payment from Mr. Anderson until after the conclusion of the alleged scheme, Defendant's Memorandum of Law [14], p. 28, these arguments are better left for trial, as summary judgment is not available in a criminal case. *See* Parker, supra, 165 F. Supp. 2d at 458.

7.	**Count III of the Indictment Is Not Time Barred**

Defendant argues that Count III of the indictment is barred by the statute of limitations. Defendant's Memorandum of Law [14], pp. 31-32.

---

[5]	The Supreme Court recently granted certiorari on the issue of "whether, to convict a state official for depriving the public of its right to the defendant's honest services through the non-disclosure of material information, in violation of the mail-fraud statute (18 U.S.C. §§1341 and 1346), the government must prove that the defendant violated a disclosure duty imposed by state law." Weyhrauch v. United States, __U.S. __, 2009 WL 789239, *1 (June 29, 2009).

In non-capital offenses "no person shall be prosecuted, tried, or punished for any offense . . . unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. §3282(a). Count III of the indictment alleges that "in or about June of 2003 to on or about November 13, 2003, the exact dates being unknown . . ." Indictment [1], p. 15, ¶2. Defendant was indicted on November 6, 2008. Thus, any conduct arising prior to November 6, 2003 is time barred.

"Generally, exact dates are not required so long as they are within the statute of limitation . . . and no prejudice is shown." United States v. Austin, 448 F.2d 399, 400 (9th Cir. 1971). Because at least some of the conduct alleged in the indictment occurred after November 6, 2003, I find that Count III is not time barred in its entirety. *See* United States v. Baldwin, 2008 WL 6045495, *7 (D.N.M. 2008) (rejecting statute of limitations challenge "because under the language of the Indictment, the United States charged Baldwin with conduct from June of 2002 to on or about November 1, 2002, and the Court believes that November 6 [the last day within the limitations period] is reasonably near 'on or about' November").

Therefore, I recommend that this aspect of defendant's motion be denied.


**8.      Counts II, III and IV Are Not Impermissibly Vague and Indefinite**

Defendant argues that the indictment alleges "on or about November 12, 2003" Joseph Anderson gave him a check in the amount of $10,000 (Indictment [1], p. 10, ¶¶10-11), whereas Counts III and IV of the indictment allege that "[b]etween in or about June of 2003 to on or about November 13, 2003" defendant deposited a check in the amount of $10,000. Indictment [1], p. 15, ¶2, p. 16, ¶2. Defendant argues that, as a result, it is unclear which checks

Counts III and IV of the indictment are referencing, and that these ambiguities cannot be resolved through the use of a bill of particulars. Defendant's Memorandum of Law [14], pp. 32-33. I disagree.

"It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' . . . [A]n indictment must 'charge[ ] a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.'" United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998). "Recognizing that particular facts needed in particular cases are obtainable by bills of particulars or discovery, we have repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" United States v. Walsh, 194 F.3d 37, 45 (2d Cir. 1999).

The indictment alleges that Mr. Anderson provided defendant with three checks totaling $40,000 in the form of $15,000 "on or about June 20, 2003", $15,000 "on or about July 30, 2003", and $10,000 "on or about November 12, 2003". Indictment [1], pp. 9-10, ¶¶4-12. Because only one of the three checks is for $10,000 and the alleged date of that check falls within the time period alleged in Counts III and IV of the indictment, a fair reading of the indictment makes it evident that this is the same check referenced in Counts III and IV. However, if defendant wishes to confirm this fact, he may do so by requesting a bill of particulars.

Defendant also appears to argue (Defendant's Memorandum of Law [14], p.33) that the indictment is ambiguous as to which checks form the basis of the allegation in Count II of the indictment that beginning no later than June 20, 2003 and continuing until May 9, 2005, defendant conspired to deposit checks in "an aggregate amount of $40,000". Indictment [1], p. 14, ¶2. There being only three checks referenced in the indictment totaling $40,000, any plausible reading of the indictment makes evident that these are the checks referenced in Count II. Again, if defendant wishes to confirm this fact, he may do so by requesting a bill of particulars.

**B.     Motion to Strike**

Defendant moves to strike those sections of the indictment which refer to the City's Code of Ethics prohibiting City officials from accepting any gift having a value greater than $75.00 where it "could reasonably be inferred that the gift was intended to influence . . . in the performance of his or her official duties" and requiring the filing of annual financial disclosure statements by May 15th. Indictment [1], pp. 5-6, ¶¶14 and 15. He also seeks to strike those paragraphs of the indictment that reference the New York State Penal Law provisions prohibiting officials from accepting benefits upon an agreement that such officials actions will thereby be influenced and the Municipal Law provision prohibiting municipal employees from having an interest in a contract with the municipality of which he is an employee, when such employee has powers over the contract. Indictment [1], p. 6, ¶¶16-19. Defendant argues that these allegations are highly irrelevant and prejudicial because the indictment does not allege that

defendant violated any of these provisions other than the City's Code of Ethics provision requiring annual financial disclosures. Defendant's Memorandum of Law [14], pp. 34-36.

Rule 7(d) provides that "the court may strike surplusage from the indictment". "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.' . . . '[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.'" <u>United States v. Scarpa</u>, 913 F.2d 993, 1013 (2d Cir. 1990).

I find that defendant has not met this "'exacting standard'". <u>Id</u>. As the government argues, the proof of these facts is probative to whether defendant knew or should have known whether he was engaging in conduct contrary to his duty as a public official. Government's Response [17], p. 43. Therefore, I recommend that defendant's motion to strike be denied.


**CONCLUSION**

For these reasons, I recommend that defendant's motion to dismiss and strike [14] be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and

Recommendation in accordance with the above statute, Fed. R. Crim. P. ("Rule") 58(g)(2) and Local Rule of Criminal Procedure 58.2.

The district judge will ordinarily refuse to consider _de novo_ arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Local Rule 58.2, or with the similar provisions of Local Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:        July 28, 2009

                         /s/ Jeremiah J. McCarthy
                         JEREMIAH J. MCCARTHY
                         United States Magistrate Judge